GEORGE B. FRIEND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5000.    Promulgated October 10, 1927.

1. Salaries paid held to be reasonable.
2. Partial loss due to fire denied where evidence failed to show that the amount received as insurance was inadequate to compensate for the damages sustained.
3. Expenses for entertaining and operation of automobile disallowed.

*H. J. Myerson, Esq.,* and *Maurice T. Weinshenk, Esq.,* for the petitioner.
*Philip M. Clark, Esq.,* for the respondent.

The petitioner brings this proceeding for the redetermination of deficiencies in income taxes of $5,460.13 for 1918; $5,682.69 for 1920; $2,127.08 for 1921; and $3,031.69 for 1922. The errors alleged are the disallowance of deductions for salary paid to petitioner's wife for the

years 1920, 1921, and 1922; disallowance of deductions for entertainment and automobile expenses for 1918, 1920, and 1921; and the disallowance of a deduction for loss because of fire in 1921.

### FINDINGS OF FACT.

Petitioner is a Chicago retail merchant handling ladies' wearing apparel and has been so engaged since 1905. He married on or about September 1, 1907, and since then and through 1922 has had his wife associated with him in business. Prior to her marriage, Sarah Friend, wife of petitioner, had been employed as manager and buyer in a similar business. She received $50 or $60 per week as compensation for such services. Subsequent to her marriage she assisted her husband in his store at 1282 Milwaukee Avenue. Some time in 1917 the petitioner opened another establishment and devoted his time and attention to it, so that during the years 1920, 1921, and 1922 his wife acted as manager and buyer for the Milwaukee Avenue store.

In managing the store, Mrs. Friend was required to supervise the pricing and selling of merchandise, the taking of inventories, conducting sales and handling the routine work incident to a going business concern. She had an assistant manager who worked under her direction and carried out her instructions and ideas, receiving as compensation therefor $75 per week. Her duties as buyer for the store required her to visit the manufacturing establishments in and around Chicago in search of new styles and dress creations which would attract the public. She not only selected and purchased new styles but altered and created designs of her own which would appeal to the trade. Two or three times during each of the four seasons she went to New York to select new styles and obtain ideas for creations of her own. Much of her time was spent away from the store, but she kept in touch with her assistant who looked to her at all times for instructions and decisions as to business policy. She operated the business without interference from the petitioner.

Petitioner and his wife had an oral understanding during the taxable years 1920, 1921, and 1922 that she would have a drawing account, ranging from $100 to $125 per week as compensation for her services. From time to time, as needed, and in varying amounts, she made withdrawals which were charged against her. For the year 1920 she withdrew $8,055; for 1921, approximately $6,100 and the same amount for 1922. The withdrawals were made by various means—sometimes by checks signed by her husband, sometimes by the payment of her bills which were presented at the store, and sometimes by cash withdrawals, for which vouchers were given. The compensation received by Mrs. Friend was used for personal, household, and any other expense which she might incur. Peti-

tioner's wife has always drawn compensation for her services and even prior to her becoming sole manager and buyer, she received between $75 and $100 per week for assisting her husband.

In 1912 the petitioner and his uncle purchased a three-story brick building situated on two lots at 1467 and 1469 South Michigan Avenue, Chicago. One of the lots was purchased outright with the building. A long-time lease was purchased on the other, the lease having a remaining life at date of purchase of 89 years. The property cost $78,000 and was paid one-fourth by petitioner and three-fourths by his uncle. The value allocated to the building by the owners was $60,000. The structure was 40 feet by 160 feet with a large freight elevator located approximately 100 feet back, which was used to lift automobiles to the second and third floors. In November, 1921, the building was partially destroyed by a fire that started near the elevator, completely destroying it and extensively damaging the rear of the building. The fire burned through the second and third floors and the roof, causing the second and other floors to cave in upon the first. Water so weakened the walls and foundations that the sagging floors and their own weight caused the exterior walls to bulge outward over the adjoining property. The basement which contained the heating plant was filled with debris and water, ruining the heating system and causing the abandonment of the basement. After the fire an architect estimated that the cost of replacing the building in its condition prior to the fire, would be approximately $15,000.

Insurance amounting to $50,000 was carried on the building by a number of companies and in attempting to arrive at an adjustment, the owners held out for the estimate given by the architect. The insurance companies refused to allow more than $9,231.10, which was finally accepted by the owners. The actual cost of restoring the building was greater than either of the estimates, amounting to $24,520.81. The work was done by the Great Lakes Construction Co. on a time and material plus 10 per cent basis. In the construction of the building it was necessary to wreck the walls in the rear of the building and then rebuild. In so doing the bricks and beams which could be salvaged were used in rebuilding. After reconstruction, the dimensions of the second and third floors were 40 feet by 80 feet. The elevator was not rebuilt and the basement was abandoned. A new heating plant had to be installed on the main floor. Approximately 60 per cent of the roof had to be rebuilt and the balance had to be freshly tarred and graveled. An itemized account of the expenditures in restoring the structure is as follows:

| | | | | |
|---|---|---|---|---|
| Great Lakes Construction Co | $17,747.13 | Decorating | | $280.00 |
| Architect's fees | 1,357.68 | Flooring | | 151.00 |
| Heating plant | 2,709.00 | Oil heater | | 700.00 |
| Plumbing | 534.00 | Additional equipment | | 156.00 |
| Roofing | 511.00 | Unaccounted for | | 375.00 |

The bills for the work done were first approved by the architect and then paid by the owners.

During the taxable years an automobile belonging to the petitioner was used to some extent in the business, such as to go and come from the store, deliver packages and to exchange packages between the stores. Petitioner estimated that the expenses incurred thereby were $600 in 1920 and a like sum in 1921. Petitioner likewise estimated that his entertainment expenses amounted to $600 in 1919, $1,000 in 1920, and $1,000 in 1921. These estimated expenses were deducted from gross income for each of the respective years.

The respondent disallowed the deductions taken for salaries, the deduction for petitioner's pro rata share of the loss by fire which the petitioner alleged was $5,904.92 and also disallowed the estimated expenses for use of the automobile and entertaining.

OPINION.

MORRIS: The first question relates to the deduction of salaries paid to the petitioner's wife as compensation for services during 1920, 1921, and 1922. The evidence contained in the record of the duties performed by petitioner's wife, and the testimony of competitors as to the value of services performed and salaries paid therefor to others who performed similar services, convinces us that the amounts withdrawn by Mrs. Friend during each of the years were not unreasonable for the services which she rendered. The volume and the earnings of petitioner's business are not in the record, but there is testimony sufficient to sustain our decision without a showing of these facts which, although important, are by no means solely determinative of the question of reasonableness of salaries paid.

The second issue is the deductibility of an alleged loss sustained by petitioner because of fire. We can not determine from the record the cost or the March 1, 1913, value of the parts of the building or equipment which were destroyed or damaged or abandoned. There must be some measure of the damage sustained before the amount of the loss can be determined. Petitioner would have us measure the loss by the cost of reconstruction less the amount of insurance allowed. It seems apparent to us that a loss could not be determined upon such a basis for the reason that depreciation sustained between the date of acquisition and the date of the fire is not taken into

consideration, and for the further reason that some of the items entering into the cost of reconstruction represent capital additions. We therefore approve the determination of the respondent. Cf. *Treat Hardware Corporation* v. *Commissioner*, 6 B. T. A. 768.

The amounts deducted by petitioner as entertainment and automobile expenses for 1920 and 1921 were arbitrarily fixed by George B. Friend, and represented his estimate as to the amounts actually expended. Petitioner failed to offer evidence to sustain these deductions other than the testimony of Friend that the amounts represented his best guess. In the absence of sufficient evidence to support the petitioner's allegation the respondent's determination is approved.

> *Judgment will be entered on 15 days' notice, under Rule 50.*